IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF FLORIDA
ORLANDO DIVISION

| | | |
|---|---|---|
| JAVEOUS INGRAM a Florida resident, | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION |
| v. | ) ) | FILE No. 5:25-CV-251-WWB-PRL |
| ALL AMERICAN LIFE, a Florida Company, NAZAR HYLTON POWELL, a Florida Resident, FARAZ BUTT, a Florida Resident, PETER AFFATATI, JR, a Florida Resident | ) ) ) ) ) ) | JURY TRIAL REQUESTED |
| Defendants. | ) | |

## **DEFENDANTS' ANSWER AND DEFENSES**

COMES NOW, ALL AMERICAN LIFE, NAZAR HYLTON POWELL, FARAZ BUTT, and PETER AFFATATI, JR by and through the undersigned counsel, and files this, their Answer and Defenses to Plaintiff JAVEOUS INGRAM COMPLAINT's enumerated paragraphs as follows:

1. As the Supreme Court recently explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls-3.7 million complaints in 2019 alone ... For

nearly 30 years, the people's representatives in Congress have been
fighting back." Barr v. Am. Ass'n of Pol. Consultants LLC, 140 S. Ct
2335, 2343 (2020).

**Defendants state that the allegations contained in in this paragraph set forth**
**legal arguments and/or call for legal conclusions that require no response**
**from these Defendants. To the extent any response is required, the cited**
**authorities speak for themselves and Defendants deny that they committed**
**any violations of applicable federal or state law.**

2. Plaintiff JA VEOUS INGRAM ("Plaintiff" or "Ingram) brings this
action under the Telephone Consumer Protection Act ("TCPA"), 47
U.S.C. § 227, alleging that Defendants ALL AMERICAN LIFE INC
under the direction and control of NAZAR HYLTON POWELL, FARAZ
BUTT, PETER AFFATATI JR sent a series of automated telemarketing
calls for the purposes of commercial solicitation by contacting Plaintiff's
cellular telephone number listed on the National Do-Not-Call Registry,
which is prohibited by the TCPA.

**Defendants admit only that Plaintiff brings this action under the TCPA and**
**denies the remaining allegations herein.**

3. Plaintiff never consented to receive any of these phone calls,
which were placed for telemarketing purposes.

**Defendants do not have knowledge of these allegations as Defendants did not make these calls, and as such the allegations are denied.**

4. The Plaintiff is JAVEOUS INGRAM ("Plaintiff" or "Ingram"), a natural person, who resides in Lady Lake, Florida, is a citizen of the State of Florida, and was the individual who received the alleged phone calls in this case on his private mobile telephone, and was a resident of Florida during the calls, in this case in Lake County, Florida.

**Defendants do not have knowledge of these allegations as Defendants did not make these calls, and as such the allegations are denied.**

5. Defendant ALL AMERICAN LIFE INC ("All American") is a corporation organized and existing under the laws of Florida and can be served via registered agent NAZAR HYLTON POWELL at 2610 Belmont Ln. North Lauderdale, FL 33068.

**Defendants admit.**

6. Defendant NAZAR HYLTON POWELL ("Powell") is a natural person, resident of Florida, an officer of All American and can be served at 2610 Belmont Ln. North Lauderdale, FL 33068.

**Defendants admit.**

7. Defendant FARAZ BUTT ("BUTT") is a natural person, resident of Florida, an officer of All American and can be served at 4821 Kensington Cir. Coral Springs, FL 33076.

**Defendants admit.**

8. Defendant PETER AFFATATI JR ("Afftatati") is a natural person, resident of Florida, an officer of All American and can be served at 507 Spoonbill Ter. Deerfield Beach, FL 33442.

**Defendants admit.**

9. Unnamed party ARIEL PANDY ("Pandy") is an employee of All American, Powell, Butt, Affatati, and operates at their behest and orders.

**Defendants deny.**

10. Jurisdiction. This Court has federal-question subject matter jurisdiction over Plaintiffs TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. Mims v. Arrow Fin. Ser's., LLC, 565 U.S. 368,372 (2012). This Court has supplemental subject matter jurisdiction over Plaintiffs claim arising under the Florida Telemarketing Act because that claim arises from the same nucleus of operative fact, i.e., Defendant's telemarketing robocalls to Plaintiff; adds little complexity to the case.

**Defendants only admit this Court has jurisdiction.**

11. Personal Jurisdiction. This Court has general personal jurisdiction over All American because Defendant is a Florida corporation.

**Defendants admit.**

12. Personal Jurisdiction. This Court has general personal jurisdiction over Powell because Defendant is a Florida resident.

**Defendants admit.**

13. Personal Jurisdiction his Court has general personal jurisdiction over Butt because Defendant is a Florida resident.

**Defendants admit.**

14. Personal Jurisdiction. This Court has general personal jurisdiction over Affatati because Defendant is a Florida resident.

**Defendants admit.**

15. Venue is proper in this District pursuant to 28 U.S.C. §1391(b)(1)-(2) because a substantial part of the events giving rise to the claims -the calls and sale of goods and services - occurred in this District and because Plaintiff resides in this District.

**Defendant denies.**

16. In 1991, Congress enacted the TCPA to regulate the explosive growth

of the telemarketing industry. In so doing, Congress recognized that

"[u]nrestrictcd telemarketing ... can be an intrusive invasion of privacy[.]"

Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5)

(1991) (codified at 47 U.S.C. § 227).

**Defendants state that the allegations contained in in this paragraph set forth legal arguments and/or call for legal conclusions that require no response from these Defendants. To the extent any response is required, the cited authorities speak for themselves and Defendants deny that they committed any violations of applicable federal or state law.**

17.The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service ... or any service for which the called party is charged for the call." See 47 U.S.C. § 227(b)(l)(A)(ili).

**Defendants state that the allegations contained in in this paragraph set forth legal arguments and/or call for legal conclusions that require no response from these Defendants. To the extent any response is required, the cited authorities speak for themselves and Defendants deny that they committed any violations of applicable federal or state law.**

18. The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(l)(A). See 47 U.S.C. § 227(b)(3).

**Defendants state that the allegations contained in in this paragraph set forth legal arguments and/or call for legal conclusions that require no response from these Defendants. To the extent any response is required, the cited authorities speak for themselves and Defendants deny that they committed any violations of applicable federal or state law.**

19. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

**Defendants state that the allegations contained in in this paragraph set forth legal arguments and/or call for legal conclusions that require no response from these Defendants. To the extent any response is required, the cited authorities speak for themselves and Defendants deny that they committed any violations of applicable federal or state law.**

20. The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 199 I, CG Docket No. 02-278, Report and Order, 18 F.C.C. Red. 14014, 141151165 (2003).

**Defendants state that the allegations contained in in this paragraph set forth legal arguments and/or call for legal conclusions that require no response from these Defendants. To the extent any response is required, the cited authorities speak for themselves and Defendants deny that they committed any violations of applicable federal or state law.**

21. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("roboca\ls") to wireless numbers and residential lines. Specifically, it ordered that:

[A] consumer's written consent to receive telemarketing robocalJs must be signed and be sufficient to show that the consumer: (I) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a

telephone number the consumer designates. In addition, the written

agreement must be obtained "without requiring, directly or indirectly,

that the agreement be executed as a condition of purchasing any good or

service.[]"  In the Matter of Rules & Regulations Implementing the Tel.

Consumer Prot. Act of 1991, 27 F.C.C. Red. 1830, 1844 (2012) (footnotes

omitted).

**Defendants state that the allegations contained in in this paragraph set forth**

**legal arguments and/or call for legal conclusions that require no response**

**from these Defendants.  To the extent any response is required, the cited**

**authorities speak for themselves and Defendants deny that they committed**

**any violations of applicable federal or state law.**

22. The National Do Not Call Registry allows consumers to register their

telephone numbers and thereby indicate their desire not to receive telephone

solicitations at those numbers. See 47 C.F.R. § 64.1200(cX2). A listing on

the Registry "must be honored indefinitely, or until the registration is

cancelled by the consumer or the telephone number is removed by the

database administrator." Id.

**Defendants state that the allegations contained in in this paragraph set forth**

**legal arguments and/or call for legal conclusions that require no response**

**from these Defendants.  To the extent any response is required, the cited**

authorities speak for themselves and Defendants deny that they committed any violations of applicable federal or state law.

23. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

**Defendants state that the allegations contained in in this paragraph set forth legal arguments and/or call for legal conclusions that require no response from these Defendants. To the extent any response is required, the cited authorities speak for themselves and Defendants deny that they committed any violations of applicable federal or state law.**

24. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated this under. 47 U.S.C. § 227(c)(5).

**Defendants state that the allegations contained in in this paragraph set forth legal arguments and/or call for legal conclusions that require no response from these Defendants. To the extent any response is required, the cited authorities speak for themselves and Defendants deny that they committed any violations of applicable federal or state law.**

25. Under the TCPA, an individual may be personally liable for the acts alleged in this Complaint pursuant to 47 U.S.C. § 217 of the TCPA, which reads, inter alia:

[T]he act, omission, or failure of any agent, or other person acting for or employed by any common carrier or user, acting within the scope of his employment, shall in every case be deemed to be the act, omission, or failure of such carrier or user as well as of that person. 47 U.S.C. § 217 (emphasis added).

**Defendants state that the allegations contained in in this paragraph set forth legal arguments and/or call for legal conclusions that require no response from these Defendants. To the extent any response is required, the cited authorities speak for themselves and Defendants deny that they committed any violations of applicable federal or state law.**

26. When considering individual officer liability, other Courts have agreed that a corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. See, e.g., Jackson's Five Star Catering, Inc., v. Beaso11, 2013 U.S. Dist. LEXIS 159985, • 10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA "while they 'had direct, personal participation in or personally authorized the conduct found to have violated the statute."');

Maryland v. Universal Elections, 787 F. Supp. 2d 408, 415-16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

**Defendants state that the allegations contained in in this paragraph set forth legal arguments and/or call for legal conclusions that require no response from these Defendants. To the extent any response is required, the cited authorities speak for themselves and Defendants deny that they committed any violations of applicable federal or state law.**

27. Florida Statutes§ 501.059 makes it a violation to "make or knowingly allow a telephone sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)( a).

**Defendants state that the allegations contained in in this paragraph set forth legal arguments and/or call for legal conclusions that require no response from these Defendants. To the extent any response is required, the cited authorities speak for themselves and Defendants deny that they committed any violations of applicable federal or state law.**

28. A "telephone sales call" is defined as a 'telephone call, text message,

voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 50 J .059(j).

**Defendants state that the allegations contained in in this paragraph set forth legal arguments and/or call for legal conclusions that require no response from these Defendants. To the extent any response is required, the cited authorities speak for themselves and Defendants deny that they committed any violations of applicable federal or state law.**

29. "Doing business in this state" means businesses that conduct telephonic sales calls from a location in Florida or from other states or nations to consumers located in Florida.

**Defendants state that the allegations contained in in this paragraph set forth legal arguments and/or call for legal conclusions that require no response from these Defendants. To the extent any response is required, the cited authorities speak for themselves and Defendants deny that they committed any violations of applicable federal or state law.**

30. "Prior express written consent" means an agreement in writing that:

Fla. Stat. §50l .0059(g).

   a.  Bears the signature of the called party;

   b.  Clearly authorizes the person making or allowing the placement of a telephonic sales calls by telephone call, text message, or voicemail transmission to deliver or cause to be delivered to the called party a telephone sales call using an automated system for the selection or dialing of telephone numbers, the playing of a recorded message when a connection is completed to a number called, or the transmission of a prerecorded voicemail;

   c.  Includes the telephone number to which the signatory authorizes a telephonic sales call to be delivered; and

   d.  Includes a clear and conspicuous disclosure informing the called party that;

      1.  By executing the agreement, the called party authorizes the person making or allowing the placement of a telephonic sales call to deliver or cause to be delivered a telephonic sales call to the called party using an automated system for the selection or dialing of telephone numbers or playing of a recorded message when a connection is completed to a number called; and

      2.  He or he is not required to directly or indirectly sign the written

agreement or to agree to enter into such agreement as a condition of purchasing any property, goods, or services.

**Defendants state that the allegations contained in in this paragraph set forth legal arguments and/or call for legal conclusions that require no response from these Defendants. To the extent any response is required, the cited authorities speak for themselves and Defendants deny that they committed any violations of applicable federal or state law.**

31. A person aggrieved by a violation of this section may bring an action to recover actual damages or $500, whichever is greater. Fla. Stat.§ 501.059(10)(a)(2).

**Defendants state that the allegations contained in in this paragraph set forth legal arguments and/or call for legal conclusions that require no response from these Defendants. To the extent any response is required, the cited authorities speak for themselves and Defendants deny that they committed any violations of applicable federal or state law.**

32. If the court finds that the Defendant's willfully or knowingly violated this section or rules adopted pursuant to this section, the court may, in its discretion, increase the amount of the award to an amount equal to not more

than three times the amount available under paragraph (a). Fla. Stat.§ 50l.059(10)(a)(2)(b).

**Defendants state that the allegations contained in in this paragraph set forth legal arguments and/or call for legal conclusions that require no response from these Defendants. To the extent any response is required, the cited authorities speak for themselves and Defendants deny that they committed any violations of applicable federal or state law.**

33. A commercial telephone seller or salesperson making a commercial telephone solicitation call may not use technology that deliberntely displays a different caller identification number than the number the call is originating from to conceal the true identity of the caller. Fla. Stat. § 50 l.6 l 6(7)(b).

**Defendants state that the allegations contained in in this paragraph set forth legal arguments and/or call for legal conclusions that require no response from these Defendants. To the extent any response is required, the cited authorities speak for themselves and Defendants deny that they committed any violations of applicable federal or state law.**

34. A commercial telephone seller or salesperson may not transmit more than three commercial telephone solicitation phone calls from any number to

a person over a 24-hour period on the same subject matter or issue, regardless of the phone number used to make the call. Fla. Stat § 501.616(6)(b). In addition to any other penalties or remedies provided under law, a person who is injured by a violation of the provisions of this part may bring a civil action for recovery of actual damages and/or punitive damages, including costs, court costs, and attorney's fees. No provision of this part shall be construed to limit any right or remedy provided under law. Fla. Stat. § 501.625.

**Defendants state that the allegations contained in in this paragraph set forth legal arguments and/or call for legal conclusions that require no response from these Defendants. To the extent any response is required, the cited authorities speak for themselves and Defendants deny that they committed any violations of applicable federal or state law.**

35. Defendant provides insurance services to people in Florida and nationwide.

**Defendants deny this allegation as plead.**

36. Defendant routinely violates the TCPA as a part of their business model and knowingly and willfully commit TCPA violations.

**Defendants deny.**

37. Defendant uses telemarketing to promote their products and services.

**Defendants deny this allegation as plead. During the times complained of Defendants did not make outbound calls to consumers.**

38. Defendant's telemarketing efforts include the use of automated dialing equipment to send automated calls.

**Defendants deny this allegation.**

39. Plaintiff did not consent to any of the phone calls alleged herein.

**Defendants do not have sufficient information to admit or deny this allegation and as such the same is hereby denied.**

40. On September 1, 2024, Plaintiff personally and successfully added their cellphone number, which ends in -7415, to the National Do-Not-Call Registry ("DNC").

**Defendants do not have sufficient information to admit or deny this allegation and as such the same is hereby denied.**

41. Plaintiff has received at least sixteen ( 16) telemarketing calls between October 4, 2024, and October 24, 2024, to his personal cell phone number (689) 207-7415, without his prior express written consent and not related to an emergency purpose, promoting insurance services from Defendants.

42. Call 1-S, DNC Requests #1-5: Between October 4, 2024, and October 10, 2024, Plaintiff received 5 phone calls from Defendant's representatives. Plaintiff answered the phone and was subjected to solicitation for health

insurance by representatives who said they were from Healthcare Marketplace. See Table A.

**Defendants deny they made the calls set forth in Table A. As for the remaining allegations of this paragraph, Defendants do not have sufficient information to admit or deny this allegation and as such the same is hereby denied.**

43. On all five calls described in the above paragraph Plaintiff explicitly conveyed his disinterest to the telemarketer telling them to "stop calling" and made clear his registration on the DNC list, subsequently concluding the phone calls.

**Defendants do not have sufficient information to admit or deny this allegation and as such the same is hereby denied.**

44. Calls 6-15: From October 12, through October 24, 2024, Plaintiff continued to receive unauthorized automated calls and was persistently solicited health insurance by various representatives affiliated with the Health Insurance Marketplace but simply told them he was still uninterested and hung up. See Table A.

**Defendants do not have sufficient information to admit or deny this allegation**

**and as such the same is hereby denied.**

45. Call 16: On October 24, at 4:35 PM, Plaintiff received a phone call, with his caller identification displaying (689) 888-6563. Plaintiff was again solicited for health insurance and decided to play along in an attempt to unveil the identity of the persistent caller. Plaintiff engaged with "Alex from Healthcare Marketplace" during this call, managing to answer the questions correctly.

**Defendants do not have sufficient information to admit or deny this allegation and as such the same is hereby denied.**

46. Plaintiff successfully managed to get transferred to "Ariel Pandy", an agent representing Defendant. Following the transfer, Pandy, using the email address ariel@allamericanlifegroup.com, sent Plaintiff an email providing information confirming the identity of herself and All American being the responsible parties for the calls.

**Defendants admit only that Defendant sent an email to the Plaintiff through its former employee Ariel Pandy.**

47. On information and belief, the area code on the caller ID was spoofed or

selected by contrivance to convey to Plaintiff the false impression that the caller was from his area.

**Defendants do not have sufficient information to admit or deny this allegation especially as it does not state what number(s) is being referred to and as such the same is hereby denied. Defendant further states it does not "spoof" numbers and denies that allegation.**

48. At no point during the first call did Plaintiff grant consent for Defendants or Defendant's agent(s) to make subsequent calls to his number in the future.

**Defendants do not have sufficient information to admit or deny this allegation and as such the same is hereby denied.**

49. All the calls, as asserted in this legal action, were initiated with manipulated caller IDs commencing with the area codes (689), (214), (215), (281), and were carried out by Defendants and/or their agents with the intent of promoting the defendant's health insurance services to Plaintiff.

**Defendants do not have sufficient information to admit or deny this allegation and as such the same is hereby denied.**

50. The following is a table detailing the telephone calls sent by Defendants

to Plaintiff's cell phone number:

**Defendants deny it made any such phone calls.**

51. At no point did Plaintiff ever waive his rights to sue Defendants under the TCPA or any Florida state law.

**Defendants deny.**

52. Defendants did not have Plaintiff's prior express written consent to make any of these telemarketing calls.

**Defendants do not have sufficient information to admit or deny this allegation and as such the same is hereby denied.**

53. Defendants did not have Plaintiff's prior express consent (oral or otherwise) to make any of these telemarketing calls.

**Defendants do not have sufficient information to admit or deny this allegation and as such the same is hereby denied.**

54. Prior to these unsolicited telephone communications, Plaintiff has never done any business with Defendants, and Plaintiff never provided Defendants with his cellular telephone number.

**Defendants do not have sufficient information to admit or deny this allegation and as such the same is hereby denied.**

55. To the extent that Defendants contend that they obtained consent or agreement from Plaintiff for the calls at issue here, the Telemarketing Sales

Rule, 16 C.F.R. § 310.5(a)(5), requires that such records be maintained. In any event, consent is an affirmative defense under the TCPA, this defense is unavailable unless Defendants can show that they had prior express consent in writing and that they have otherwise complied with all of the requirements of 47 C.F.R. § 64.1200(c)(2), including maintaining written procedures on national do-not-call rules, training personnel on national do-not-call rules, maintaining an internal do-not-call list, and accessing the national do-not-call database no more than 31 days prior to making any calls, and maintaining records documenting such access. Defendants did not have prior express written consent to such calls from Plaintiff.

**Defendants state that the allegations contained in in this paragraph set forth legal arguments and/or call for legal conclusions that require no response from these Defendants.  To the extent any response is required, the cited authorities speak for themselves and Defendants deny that they committed any violations of applicable federal or state law.**

56. Plaintiff is informed and believes and thereon alleges that Defendants do not have policies and procedures in place to prevent telephone solicitations in violation of the TCPA regulations.

**Defendants state that the allegations contained in in this paragraph set forth**

**legal arguments and/or call for legal conclusions that require no response from these Defendants. To the extent any response is required, the cited authorities speak for themselves and Defendants deny that they committed any violations of applicable federal or state law.**

57. Upon information and belief, Defendants do not scrub their calling lists against the National Do-Not-Call Registry.

**Defendants state that the allegations contained in in this paragraph set forth legal arguments and/or call for legal conclusions that require no response from these Defendants. To the extent any response is required, the cited authorities speak for themselves and Defendants deny that they committed any violations of applicable federal or state law.**

58. Upon information and belief, Defendants do not train their employees and representatives to comply with "Do-Not-Call requests" made by consumers, such as Plaintiff. As demonstrated in the above allegations, Defendants did not stop calling Plaintiff's phone number when they were told to stop calling.

**Defendants state that the allegations contained in in this paragraph set forth legal arguments and/or call for legal conclusions that require no response**

**from these Defendants. To the extent any response is required, the cited authorities speak for themselves and Defendants deny that they committed any violations of applicable federal or state law.**

59. Plaintiff pays for each incoming and outgoing call on his telephone under an unlimited calling arrangement, as defined and set forth in 47 CFR § 64.1200(aXI )(iii).

**Defendant does not have sufficient information as to his telephone plan arrangement and as such the same allegation is denied. Defendant denies this allegation Defendants state that the allegations contained in in this paragraph set forth legal arguments and/or call for legal conclusions that require no response from these Defendants. To the extent any response is required, the cited authorities speak for themselves and Defendants deny that they committed any violations of applicable federal or state law.**

60. Plaintiff received the calls on his private mobile telephone, as defined and set forth in 47 CFR § 64.1200(a)(1Xiii). Plaintiff's telephone number is registered with Verizon as a cellular telephone number and is used for personal purposes.

**Defendants do not have sufficient information to admit or deny this allegation**

**and as such the same is hereby denied.**

61.  These telephone solicitations constituted "calls" under the TCPA that were not for emergency purposes.

**Defendants do not have sufficient information to admit or deny this allegation and as such the same is hereby denied.**


62.  Defendants are not exempt from the TCPA.

**Defendants admit.**

63.  Defendant's calls to Plaintiff were "telephone solicitations" as defined by the TCPA.

**Defendants do not have sufficient information to admit or deny this allegation and as such the same is hereby denied.**

64.  Defendant's calls to Plaintiff were "unsolicited advertisements" as defined by the TCPA.

**Defendants do not have sufficient information to admit or deny this allegation and as such the same is hereby denied.**

65. Defendants Powell, Butt, Affatati are Liable for the calls made by the employees of All American to Plaintiff's phone because they were in control of the system used to make the calls at all times.

**Defendants deny.**

66. Powell, Butt, Affatati are responsible for the loading of the data (numbers) into the phone system to market across the United States, including plaintiff's phone number.

**Defendants deny.**

67. Defendants Powell, Butt, Affatati purchased and used spoofing technology to make the calls to Plaintiff's phone to hide the Caller 1D associated with their company.

**Defendants deny.**

68. Powell, Butt, Affatari provided the scripts used by the All Anerican employees, including Pandy, while making the solicitation calls to Plaintiff.

**Defendants deny.**

69. Powell, Butt, Affatari trained All American's employees, including Pandy, on the usage of the scripts.

**Defendants deny.**

70. Powell, Butt, Affatati operate as officers of All American and are responsible for the marketing campaigns conducted by All American.

**Defendants deny.**

71. Plaintiff received sixteen (16) telemarketing calls from Defendants to Plaintiff's personal cell phone number which is registered on the National

Do-Not-Call list.

**Defendants do not have sufficient information to admit or deny this allegation and as such the same is hereby denied.**

72. Plaintiff made at least five (5) do not call requests to Defendant that were ignored.

**Defendants do not have sufficient information to admit or deny this allegation and as such the same is hereby denied.**

73. Defendants Powell, Butt, Affatati are directly responsible and personally liable for the calls made to Plaintiff's phone on behalf of All American.

**Defendants deny.**

74. Defendant's calls harmed the Plaintiff by causing the very harm that Congress sought to prevent-a "nuisance and invasion of privacy."

**Defendants deny.**

75. Defendant's calls harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

**Defendants deny.**

76. Defendant's calls harmed Plaintiff by trespassing upon and interfering with Plaintiffs rights and interests in Plaintiffs cellular telephone line.

**Defendants deny.**

77. Defendant's calls harmed Plaintiff by intruding upon Plaintiff's seclusion. Plaintiff has been harmed, injured, and damaged by the calls including, but not limited to: reduced device storage, reduced data plan usage, anger, frustration, invasion of privacy, and more frequent charging of his cell phone.

**Defendants deny.**

78. The calls were to Plaintiff's cellular phone 689-207-7415 (7415) which is Plaintiff's personal cell phone that he uses for personal, family, and household use. Plaintiff maintains no landline phones at his residence and has not done so for at least 15 years and primarily relies on cellular phones to communicate with friends and family. Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. Plaintiff further has his cell phone registered in his personal name, pays for the cell phone from his personal accounts, and the phone is not primarily used for any business purpose.

**Defendants do not have sufficient information to admit or deny this allegation and as such the same is hereby denied.**

79. Plaintiff re-alleges and re-adopts paragraphs 1 through 78 of this Complaint as if fully set forth herein.

**Defendants restate their answers and defenses herein.**

80. Defendants called Plaintiff's private residential telephone number which was successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the calls, in violation of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

**Defendants deny.**

81. Plaintiff was statutorily damaged at least sixteen (16) times under 47 U.S.C. § 227(c)(3)(F) by the Defendants by the telephone calls described above, in the amount of $500.00 per call.

**Defendants deny.**

82. Plaintiff was further statutorily damaged because Defendants willfully or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount as permitted under U.S.C. § 227(c)(5) for each and every willful or knowing violation.

**Defendants deny.**

83. As a result of Defendant's and Defendant's agents' violations of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2), Plaintiff seeks for himself S500 in statutory damages, or $1,500.00 if trebled, for each and every violation, pursuant to 47 U.S.C. § 227(c)(3)(F).

**Defendants admit that Plaintiff seeks damages,  but deny he is entitled to**

**receive any award against the Defendants.**

84. Pursuant to 47 U.S.C. § 227(c)(5)(A), Plaintiff also seeks a permanent injunction prohibiting Defendants and their affiliates and agents from making non-emergency telemarketing calls to cellular telephone numbers without the prior express written consent of the called party.

**Defendants admit Plaintiff seeks an injunction but deny he is entitled to the same.**

85. Plaintiff re-alleges and re-adopts paragraphs I through 78 of this Complaint as if fully set forth herein.

**Defendants restate their answers and defenses herein.**

86. Defendants called Plaintiff more than three times within a 24-hour period. Fla. Stat. 501.616(6)(b).

**Defendants deny.**

87. Defendants called Plaintiff using automated dialing equipment that intentionally transmitted false caller identification information. Fla. Stat. 50l.6l6(7)(b).

**Defendants deny.**

88. In addition to any other penalties or remedies provided under law, a person who is injured by a violation of the provisions of this part may bring

a civil action for recovery of actual damages and/or penalties and/or punitive damages, including costs, court costs, attorney's fees. No provision of this part shall be construed to limit any right or remedy provided under law. Fla. Stat. 501.625

**Defendants deny.**

89. Pursuant to 47 U.S.C. § 227(c)(5)(A), Plaintiff also seeks a permanent injunction prohibiting Defendants and their affiliates and agents from making non-emergency telemarketing robocalls to cellular telephone numbers without the prior express written consent of the called party.

**Defendants deny.**

90. Plaintiff incorporates the preceding paragraphs I-78 as if fully set forth herein.

**Defendants restate their answers and defenses herein.**

91. All American and/or their affiliates and authorized representatives made a telephone call to Plaintiff for the purpose of soliciting a sale of consumer goods or services. Fla Stat.§ 501.059(j).

**Defendants deny.**

92. Plaintiff is entitled to an award of at least $500 in damages for each such violation of Fla. Stat§ 501.059(j) pursuant to Fla. Stat.§ 501.059(10)(a)(2).

**Defendants deny.**

## AFFIRMATIVE DEFENSES

**AND NOW,** setting forth its affirmative defenses, Defendants respectfully states as follows:

1. Plaintiff fails, under both federal and state law, to state a claim upon which relief can be granted.

2. Defendants raise the defenses of improper and insufficiency of service of process.

3. Plaintiff's claims are barred at least in part by the applicable statute of limitations or the doctrine of laches.

4. Plaintiff's claims are barred, in whole or in part, by the doctrines of consent, acquiescence, waiver, estoppel, or other equitable defenses to the extent that Plaintiff agreed to receive the alleged phone calls or texts, failed to take action to request that he no longer receive the calls from the party making the calls.

5.  To the extent Defendants or anyone acting on its behalf or at its direction, made any calls or texts to Plaintiff in violation, out of an abundance of caution and to the extent Defendant is required to assert it as an affirmative defense, any alleged phone calls or texts were made in good faith and with a reasonable belief that it was not in violation of state or federal law, were justified, proper, and lawful, and were taken without any intent to violate state or federal law.

7. Although Defendants denies that it, or anyone acting on its behalf or at its direction, made any calls or texts to Plaintiff in violation of law, out of an abundance of caution and to the extent Defendants is required to assert it as an affirmative defense, any alleged calls or texts were made in good faith and in conformity with and in reliance on administrative regulation, order, ruling, approval, interpretation, administrative practice, and/or enforcement policy of the United States Federal Communications Commission and/or other governmental body.

8. Although Defendants denies that it, or anyone acting on its behalf or at its direction, made any calls or texts to Plaintiff in violation of law and even though Plaintiff bears the burden of proving a violation of the TCPA, out of an abundance of caution and to the extent Defendants is required to assert it as an affirmative defense, Plaintiff provided his "prior express consent" to receiving the alleged telephone calls or texts.

9. Reasonable practices and procedures were established and implemented, with due care, to effectively prevent telephone solicitation in violation of the regulations.

10. The Complaint fails, in whole or in part, to state a claim upon which injunctive relief can be awarded.

11. Defendants has not engaged in any conduct or committed any act or omission

that was or could have been the direct, legal, and/or proximate cause of any damage, loss, or injury to Plaintiff.

12. Plaintiff's damages, if any, were caused by the fault of others over whom Defendants has no control and for whom Defendants has no responsibility.

13. Plaintiff suffered no actual damages, and any actual damages allegedly sustained are too speculative as a matter of law.

14. Plaintiff is not entitled to recover any amount from Defendants as damages, including any treble or punitive damages.

16. Plaintiff is not entitled to recover attorney's fees, legal expenses and/or court costs from Defendants.

16. Plaintiff's claims are barred in whole or in part by Plaintiff's own unclean hands and/or pursuant to the doctrine of inexcusable neglect.

WHEREFORE, Defendants pray that this Answer and Affirmative Defenses be deemed good and sufficient and that, after due proceedings are had, there be judgment herein in favor of Defendants and against Plaintiff, dismissing Plaintiff's claims in their entirety and with prejudice at Plaintiff's cost and awarding to Defendants its reasonable attorney fees and costs incurred in defending this matter and such other relief as the Court may deem just and equitable.

*Signature Next Page*

Dated: May 19, 2025.

Respectfully submitted,


*/s/ Michael J. Lober*
Michael J. Lober, Esq.
Florida Bar # 965560
Lober & Dobson, LLC
1197 Canton Street
Roswell, GA 30075
mjlober@lddlawyers.com

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 5.1</u>

The undersigned hereby certifies that the foregoing document has been prepared in accordance with the font type and margin requirements of Local Rule 5.1 of the Middle District of Florida, using a font type of Times New Romanand a point size of 14.

*/s/ Michael J. Lober*
Michael J. Lober, Esq.

_____

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 19, 2025, I electronically filed the enclosed Answer

and Affirmative Defenses, through the Court's CM/ECF filing system, which shall

provide Plaintiff with a copy of this filing as authorized by Federal Rule of Civil

Procedure 5(b)(2), as well as email to jblack20250@gmail.com


*Michael J. Lober, Esq.*
/s/ Michael J. Lober